[Civ. No. 68678. Second Dist., Div. Seven. Mar. 8, 1984.]

JAMES J. MASON, Plaintiff and Appellant, v.
GEOFFREY M. HOSTA, Defendant and Respondent.

**COUNSEL**

Ernie Zachary Park and Bewley, Lassleben & Miller for Plaintiff and Appellant.

Hart & Leonard and P. Vernon Zeitsoff for Defendant and Respondent.

## OPINION

## MERRICK, J.*—

### FACTS

Plaintiff, James J. Mason, appeals from an order denying his motion for summary adjudication of issues and granting defendant and respondent Geoffrey M. Hosta's motion for summary judgment.

Defendant is a duly licensed medical doctor. From approximately 1971 through 1981, he was engaged in the business of providing emergency department physician services as an independent contractor to hospitals. Pursuant to an "Emergency Care Agreement" with each hospital, Dr. Hosta provided a 24-hour staff of medical doctors, including himself, who were to treat all patients of the hospital's emergency facilities. In accordance with the "Agreement," the defendant billed patients directly for the emergency medical services provided, then assigned those charges for collection to the individual hospitals. Defendant was compensated by the hospital for providing this emergency department service by payment of a percentage of such accrued charges, against a recoupable monthly minimum payment.

On or about July 16, 1974, defendant entered into a contract with plaintiff, a lay person hospital administrator. A copy of the relatively simple contract is attached to this opinion as "Exhibit A." It will be noted that under the contract plaintiff was to contact fellow hospital administrators on behalf of defendant in an effort to persuade them to contract for their emergency room services with defendant. Plaintiff was to receive $250 per month for each such hospital client referred by plaintiff resulting in an emergency room service contract with defendant. The contract provided for the renegotiation of the referral fee to be paid to plaintiff based upon increases in the net receipts to defendant pursuant to such hospital agreements.

Starting in 1974, plaintiff referred hospital clients to defendant, and defendant made the referral fee payments through May 1977. To that point defendant had paid plaintiff referral fees totaling approximately $16,500. In June 1977, defendant was apparently advised by counsel that his referral fee contract with plaintiff was both illegal and unethical. Defendant notified plaintiff by letter on July 26, 1977, that he was precluded from continuing to perform under the contract, and thereupon ceased making the referral fee payments called for in the contract. Plaintiff responded by initiating this litigation.

*Assigned by the Chairperson of the Judicial Council.

I. *Contentions on Appeal*

Plaintiff/appellant contends that the contract between the parties (exhibit A) is NOT violative of Business and Professions Code section 650, and trial court erred in granting defendant/respondent's motion for summary judgment on that ground.

Conversely, the defendant/respondent contends that the contract DOES violate section 650 and thus is void and unenforceable as contrary to public policy, and that the trial court correctly granted defendant/respondent's motion for summary judgment.

Since there is a paucity of case law interpreting section 650 of the Business and Professions Code, and since we will have to examine the underlying contract (exhibit A) in the light of all provisions of the statute, we set forth the section in its entirety: "Except as provided in Chapter 2.3 (commencing with Section 1400) of Division 2 of the Health and Safety Code the offer, delivery, receipt or acceptance, by any person licensed under this division of any rebate, refund, commission, preference, patronage dividend, discount, or other consideration, whether in the form of money or otherwise, as compensation or inducement for referring patients, clients, or customers to any person, irrespective of any membership, proprietary interest or coownership in or with any person to whom such patients, clients or customers are referred is unlawful.

"Except as provided in Chapter 2.3 (commencing with Section 1400) of Division 2 of the Health and Safety Code and in Section 654.1 it shall not be unlawful for any person licensed under this division to refer a person to any laboratory, pharmacy, clinic, or health care facility solely because such licensee has a proprietary interest or coownership in such laboratory, pharmacy, clinic, or health care facility; but such referral shall be unlawful if the prosecutor proves that there was no valid medical need for such referral.

" 'Health care facility' means a hospital, nursing home, medical care facility, or private mental institution licensed by the State Department of Health Services.

"*A violation of this section is a public offense and is punishable upon a first conviction by imprisonment in the county jail for not more than one year, or by imprisonment in the state prison, or by a fine not exceeding ten thousand dollars ($10,000), or by both such imprisonment and fine. A second or subsequent conviction is punishable by imprisonment in the state prison.* " (Amended by Stats. 1975, ch. 303, § 1, p. 750; Stats. 1977, ch.

1252, § 4, p. 4287, operative July 1, 1978; Stats. 1981, ch. 610, § 1, p. 2348.) Italics indicates changes or additions by amendment.

Both appellant and respondent have referred this court to 63 Opns. Cal. Atty. Gen. 89, 90 (1980), analyzing the statute into an offense which contains five elements:

"(1) An offer, delivery, receipt or acceptance,

"(2) by any person licensed under [the healing arts provisions],

"(3) of consideration to any person,

"(4) as compensation or inducement for,

"(5) referral of patients, clients or customers."

The appellant and respondent are in agreement that the contract between them satisfies all of the first four enumerated elements, but they part company in the interpretation as to whether the payment by the respondent was compensation for "the referral of a patient, client or customer." Appellant contends that the subject payments were NOT "compensation or inducement for [appellant's] referring patients, clients, or customers to [respondent]," and therefore, are not unlawful according to the statute. Respondent argues that the subject contract provides for the payment by respondent, a licensed physician, of consideration to appellant as compensation and inducement to appellant for appellant's referral of patients, clients and customers to respondent. By its terms, and the performance required of respondent thereunder, the contract violates section 650 of the Business and Professions Code; is unlawful, void and unenforceable.

II. *Does the Alleged Contract Between the Parties Violate Section 650 of the Business and Professions Code?*

"The Business and Professions Code interdicts as a misdemeanor, and also as grounds for revocation or suspension of license, *the giving or receiving, by any person licensed to practice any of the recognized healing arts, of any unearned rebate, refund, commission,* preference, patronage dividend, dividend, *or other unearned consideration,* whether in the form of money or otherwise, *as compensation or inducement for referring patients or customers to any person or firm,* irrespective of any membership, proprietary interest, or co-ownership in or with any person or firm to whom such patients or customers are referred. This interdiction was *designed to protect the public and prohibit all unearned rebates, refunds, commissions,*

*and the like among licentiates engaged in the healing arts for the referral of patients,* and the amount of the professional charge to the patient is not an element of the denounced act." (36 Cal.Jur.3d, Healing Arts and Institutions, § 83, p. 236; italics added.)

■ A primary rule of statutory construction is that the intention of the Legislature must be ascertained if possible, and once ascertained, given effect. "It is fundamental that the objective sought to be achieved by a statute as well as the evil to be prevented is of prime consideration in its interpretation." (*Rock Creek etc. Dist.* v. *County of Calaveras* (1946) 29 Cal.2d 7, 9 [172 P.2d 863].)

In *Mast* v. *State Board of Optometry* (1956) 139 Cal.App.2d 78, 79 [293 P.2d 148], the only appellate court case cited involving Business and Professions Code section 650, in which a lay person, a first lieutenant at Norton Air Force Base, San Bernardino, referred military personnel to Dr. Richard Mast for optometrical services for which the doctor paid the lieutenant a referral fee, it was held that arrangement fell within the prohibition of Business and Professions Code section 650. "It [the statute] was designed to protect the public and to prohibit all unearned rebates, refunds, commissions and the like among licentiates engaged in the healing arts for the referral of patients."

Reduced to its essentials, it appears that the subject contract (exhibit A) encompassed the following: Plaintiff was to contact various hospitals and convince them that defendant's emergency room program was the best service for their hospital. For each of the specified hospitals that contracted with defendant, plaintiff was to be paid $250 per month for life of the contract with those hospitals, in which he had been the procuring cause.

■ It is obvious the subject contract provided for payments to plaintiff by defendant as compensation solely for plaintiff's soliciting, referring and procuring clients on defendant's behalf. Thus, the hospitals became the "clients" or "customers" of respondent Dr. Hosta as a result of plaintiff's "referrals," and, in turn, the emergency room patients of the hospitals contracted with, of necessity, became the referred "patients." Dr. Hosta billed the emergency room patients directly for medical services and would assign the collection of such charges to the individual hospitals.

The opinion of the Attorney General with respect to the "referral fee," is relevant to the payments by defendant Dr. Hosta to the plaintiff. "Section

650, by its reference to 'any unearned rebate, refund, commission, preference, patronage dividend, discount or other unearned consideration,' prohibits any offer or payment related to referral regardless of its characterization." (53 Ops.Cal.Atty.Gen. 117, 118-119 (1970).)

The same Attorney General opinion, *supra,* (53 Ops.Cal.Atty.Gen. 117, 118) indicates: "As the prohibition [of § 650] extends to *offer and delivery* as well as receipt or acceptance, *only one* of the two parties in a referral fee transaction need be a licensee in the healing arts for the transaction to be illegal." (Italics added.)

▮ Plaintiff/appellant contends that the statute requires that at the time of the referral there is a preexisting relationship between the patient, client, customer (referred) and the person making the referral. We cannot read any such requirement into section 650. It is wholly unsupported by any authority and is contrary to the clear meaning of the statute.

Plaintiff/appellant further contends that section 650 was designed to prevent patients from being charged excessive fees in order that a "kickback" could be made to the licentiate who made the referral. And, since there was no finding of such excessive fees, plaintiff could not be held to have violated the law. And, even if defendant doctor did pass on the expense of his referral fee payments to his emergency room patients, this is of little consequence like any other cost of the doctor's doing business.

The court in *Mast* v. *State Board of Optometry, supra,* 139 Cal.App.2d 78, 91, held: "An excessive charge [to the patient] is *not* an element of the offense." (Italics added.) Pertinent to this argument of plaintiff is the Attorney General's response in 63 Opns. Cal. Atty. Gen., *supra,* at page 94: "[S]ection 650 in no way requires. . . that there in fact be an obvious increased cost to patients [resulting from the prohibited referral fee] . . . . Essentially, it is the potential for harm to patients as well as actual harm to them that is proscribed by Section 650."

Certainly the referral fees paid to plaintiff by Dr. Hosta increased the doctor's overhead. Undoubtedly without this added expense the doctor could bill his services to the patients, the bearers of these health care costs, at proportionately lower rates. The effect of the subject referral fees on the cost of health care to the ultimate patients is not just potential, it is clear.

We note from a reading of the subject contract (exhibit A) that it provided for the renegotiation of the referral fee to be paid to plaintiff based on increases in the net receipts to defendant doctor pursuant to such hospital contracts. Thus the "referral fee" to be paid plaintiff was potentially directly related to the medical services rendered by defendant.

"In California alone, health care costs gross nearly $10 billion annually and undoubtedly constitute the largest single industry in the state, exceeding agriculture and aerospace in dollar volume."[1] Obviously a business of that scope and breadth is susceptible of possible abuses and potential harm to the user public. The Legislature was aware of the reprehensible practices of some unethical licentiates who engaged in nefarious practices which resulted in "kickbacks," "rebates" and "hidden fees," and enacted section 650 of the Business and Professions Code to proscribe such activities.

The subject contract provides for payments to appellant (nonlicensee) by respondent (licensed doctor) as compensation for appellant's soliciting, referring and procuring clients on respondent's behalf. It is precisely this sort of referral fee to which the prohibition of Business and Professions Code section 650 is directed. Performance of the subject contract violates the statute. "It is well established in California that a contract which requires the performance of unlawful acts is unenforceable." (*Fewel & Dawes, Inc.* v. *Pratt* (1941) 17 Cal.2d 85, 90 [109 P.2d 650].) Civil Code section 1550 provides that a lawful object is essential to the very existence of a valid contract. Similarly, Civil Code section 1607 states that the consideration for a promise must be lawful. Civil Code section 1608 provides that if any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void. Lastly, a purported agreement in direct violation of the terms of the express prohibitions in a statute is void. (*Wread* v. *Coffey-Murray, Inc.* (1941) 42 Cal.App.2d 783 [110 P.2d 123]; *Severance* v. *Knight-Counihan Co.* (1947) 29 Cal.2d 561 [177 P.2d 4, 172 A.L.R. 1107]; and *Brenner* v. *Haley* (1960) 185 Cal.App.2d 183 [8 Cal.Rptr. 224].)

No matter how subtly disguised, or ingeniously interpreted, the subject contract, by its terms, and the performance required of defendant/respondent thereunder, violates section 650 of the Business and Professions Code. Further it is an attempt to thwart the legislative design and public policy to proscribe illegal and unethical contracts providing for the payment by licensed physicians of consideration as compensation and inducement to nonlicensees for the referral of patients, clients or customers.

---

[1]Touhey & McDermott, *Comprehensive Health Planning and Procedures: The California Experience* (1974) 11 San Diego L.Rev. 353.

We find the trial court correctly granted respondent's motion for summary judgment. Its judgment is affirmed.

Johnson, Acting P. J., and Thompson, J., concurred.

EXHIBIT A